## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| JANICE C. ETHEREDGE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    Civil Action No. 5:07-CV-1521-RDP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF DECISION

Plaintiff Janice C. Etheredge brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. § 1383(c)(3), seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.  *See* 42 U.S.C. §§ 1631(c)(3), 1383(c)(3).  For the reasons outline below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Proceedings Below**

Plaintiff filed her application[1] for SSI benefits on January 26, 2005, alleging a disability onset date of May 26, 2004.[2]  (Tr. 7, 24, 34, 49-51).  Plaintiff's application was denied initially and also upon reconsideration.  (Tr. 35, 42-46).  Plaintiff then requested and received a hearing before

---

[1]Plaintiff previously filed an application for SSI benefits on February 14, 2002.  However, that application is not before this court for review.  (Tr. 24).

[2]At the video hearing held September 7, 2006 before the Administrative Law Judge, Plaintiff's alleged onset date of disability was amended to January 6, 2005.  (Tr. 7, 24).

an Administrative Law Judge ("ALJ").  A video hearing was held before ALJ Patrick R. Digby on September 7 , 2006.  (Tr. 24, 33, 36, 40-41, 196-225).  In his November 7, 2006 decision, the ALJ determined that Plaintiff was not disabled as defined in the Act and has a residual functional capacity to perform medium work with restrictions.  (Tr. 24-31).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (Tr. 4-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

**II.     Facts**

At the time of the hearing, Plaintiff was thirty-seven years old and had a high school education with some college.  (Tr. 68, 200).  Plaintiff had previously worked as a file clerk, a cashier at a warehouse supply company and a fast food restaurant, as a restaurant dishwasher, and a packager.  (Tr. 86, 220).  Plaintiff alleges that she suffers from multiple seizures per week during which time she loses consciousness and suffers falls.  (Tr. 203-04).  In addition to seizures, Plaintiff testified she also has problems with her ankles swelling, mood swings, and anger issues.  (Tr. 206-07).  Plaintiff's mother testified that Plaintiff is very slow to respond to questions and has "severe mood swings."  (Tr. 210-11).  Due to these problems, Plaintiff avers she has been unable to engage in substantial gainful activity since her alleged onset date of disability.  (Tr. 206).

Plaintiff's medications include Phenobarbital, Dilantin, and Trileptal to control her seizures. (Tr. 126).  Due to her seizures, Plaintiff does not drive because she has been unable to obtain a driver's license.  (Tr. 205).  During the hearing, Plaintiff testified, "[p]eople won't hire me" due to her seizures.  (Tr. 200-02).  Also, Plaintiff's seizures cause her to miss a significant number of days of work when employed.  (Tr. 205).  The longest job Plaintiff has held was for one year as a cashier at McDonald's.  Plaintiff testified she was terminated from that job because she was too slow.  (Tr. 205).

2

Plaintiff's medical records from Dr. Charles Ted Paulk cover the period of time from 1997 to 2000. ( Tr. 152-56). Dr. Paulk's June 5, 1997 office note indicates Plaintiff had a history of a seizure disorder and was taking Dilantin and Phenobarbital. (Tr. 156). Dr. Paulk noted that Plaintiff had been doing well and that she had not been seen by a doctor for over a year. (*Id.*). Dr. Paulk assessed Plaintiff with a seizure disorder that was poorly controlled and he adjusted her medication. (Tr. 156). On December 9, 1997, Dr. Paulk noted Plaintiff had reported she was feeling fine and had gone six to eight weeks without a seizure. (Tr. 155). Plaintiff further reported that she had been taking the prescribed medication and had only experienced a seizure in the week prior, after being seizure-free for a six to eight week period. (*Id.*). On April 14, 1998, Dr. Paulk noted Plaintiff had been doing very well and complained that she was suffering a seizure about one every ten days, but had not had any problems recently and felt fine that day. (Tr. 154). On May 6, 1999, Dr. Paulk received a phone call from the emergency room stating that Plaintiff was having recurrent seizures, in which he ordered an increase in her medications. (Tr. 153). Plaintiff was seen by Dr. Paulk on August 24, 2000 and reported that she was doing well. (Tr. 152). According to the office note, Plaintiff indicated that she "rarely" has seizures. (*Id.*). Further, Plaintiff indicated she had no complaints and her laboratory tests revealed therapeutic levels of Phenobarbital and Dilantin. (*Id.*).

Dr. Lynn Boyer of Madison Neurological is Plaintiff's treating physician. (Tr. 158-68). Dr. Boyer's records cover the period from 2002 to 2005. (Tr. 158-68, 188-93). On June 11, 2003, Plaintiff reported to Dr. Boyer that she had four to five light seizures per month. (Tr. 163). Plaintiff further reported that she was tolerating her Trileptal in spite of the side effect which caused swelling in her legs. (*Id.*). Dr. Boyer increased Plaintiff's medications, noting that Plaintiff's neurological examination was unchanged since her last visit and scheduled a six month follow-up visit. (*Id.*). On December 11, 2003, Dr. Boyer's records indicate Plaintiff reported having one to two "very light

3

seizures per week." (Tr. 162). Plaintiff's mother was in attendance and reported that Plaintiff had definitely improved. (*Id.*). Plaintiff's neurological examination was unchanged and Dr. Boyer adjusted Plaintiff's medications. (*Id.*). At Plaintiff's next follow-up visit on June 11, 2004, Dr. Boyer's office notes indicate that Plaintiff had been turned down for disability. (Tr. 160). Dr. Boyer noted that Plaintiff's seizure disorder has never been completely controlled and Plaintiff was still experiencing one to two seizures per week. (*Id.*). Dr. Boyer also opined that Plaintiff was not able to "hold down any type of job with this type of control." (*Id.*). On December 10, 2004, Dr. Boyer noted that Plaintiff has one "little seizure or aura weekly." (Tr. 159). However, Dr. Boyer reported Plaintiff's neurological examination remained unchanged. (*Id.*). Dr. Boyer's letter of April 19, 2005, indicates that Plaintiff has a diagnoses of a partial complex seizure disorder. (Tr. 190). Dr. Boyer noted that Plaintiff experiences seizures at least three times per week even when under optimal medical treatment. (*Id.*).

An examining physician, Dr. Randall Sparks, of Gill Family Medicine saw Plaintiff on April 1, 2005. (Tr. 180-87). Plaintiff reported having a seizure ten days prior and complained of swelling above her ankles, some generalized fatigue, weakness, and malaise. (Tr. 181). Dr. Sparks found Plaintiff suffered from a seizure disorder that was poorly controlled and eczema of the feet with mild onychomycosis. He prescribed medicated drops for Plaintiff's feet plus application of a lotion at bedtime. (Tr. 181).

An examining physician, Dr. Parekha Yedla of the University of Alabama at Birmingham Health Center, saw Plaintiff on March 13, 2006. (Tr. 195). Dr. Yedla found Plaintiff to have epigastric pain secondary to gastroesophageal reflux disease. (Tr. 195). Dr. Yedla noted that Plaintiff had ankle swelling which was attributed to possible venous insufficiency. (Tr. 195).

4

### III.   ALJ Decision

Determination of disability under the Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  The claimant's residual functional capacity is what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability as amended of January 6, 2005.  (Tr. 26).  Based on the medical evidence

presented, the ALJ concluded that Plaintiff does have a severe impairment of partial complex seizures; however, this impairment does not meet or equal one of the listing impairments in the Act. (Tr. 28). The ALJ found Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. (Tr. 28). The ALJ determined that Plaintiff retains the residual functional capacity to perform the exertional demands of medium work with certain restrictions. (Tr. 28). However, the ALJ found that Plaintiff cannot climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to extreme heat. (Tr. 28). Also, Plaintiff cannot work with exposure to hazardous machinery or unprotected heights, and she cannot drive. (Tr. 28). The ALJ concluded Plaintiff has not been under a disability as defined in the Act. (Tr. 30). Therefore, the ALJ found that Plaintiff is not entitled to a period of benefits. (Tr. 30-31).

The ALJ called an impartial vocational expert ("VE"), Patsy V. Bramlett, Ph.D., to testify and she was present throughout the hearing and familiar with Plaintiff's background. (Tr. 24, 219). The VE considered Plaintiff's past relevant work and concluded that all of Plaintiff's past relevant work was within her residual functional capacity. (Tr. 221). Based on the VE's testimony, the ALJ found Plaintiff's past relevant work was within her current residual functional capacity and that she would be able to return to her past relevant work. (Tr. 30). Further, the ALJ found that the job duties of Plaintiff's previous occupations as generally required by employers throughout the national economy were within Plaintiff's residual functional capacity. (Tr. 30). Accordingly, the ALJ concluded Plaintiff was not under a disability at any time through the date of the decision. (Tr. 24-31).

6

## IV.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.  (Doc. #9 at 12).  Plaintiff asserts the reason this court should grant the relief sought is that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Lynn Boyer.  (Doc. #9 at 7).

## V.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in

7

scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.    Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and that the proper legal standards were applied.

### A.    The ALJ Properly Weighed the Medical Opinions of Plaintiff's Treating Physician, Dr. Lynn Boyer.

Dr. Boyer is a neurologist who treated Plaintiff from 2002 to 2005.  (Tr. 158-68, 188-93). Plaintiff contends that the ALJ failed to give proper weight to Dr. Boyer's opinion.  (Doc. #9 at 7-12).  Although Dr. Boyer made a general statement that Plaintiff could not hold any type of work, there is no medical record evidence to indicate that Plaintiff experiences significant interference with her daily activities because of her seizures.  (Tr. 28, 97-98, 100-01).  Contrary to her testimony at the hearing, Plaintiff reported on her disability questionnaire that she does not become unconscious or "black-out" during a seizure.  (Tr. 101).  Further, Plaintiff reported that her condition does not prevent her from performing yard work or shopping, and she is able to resume her daily activities after having a seizure.  (Tr. 95-98, 101).  Therefore, the ALJ rejected Dr. Boyer's opinion because there is no objective evidence of Plaintiff's seizure activity interfering with her ability to perform daily activities.  (Tr. 29, 190).

The ALJ's decision to discount Dr. Boyer's opinion is supported by substantial evidence. The ALJ found Dr. Boyer's conclusions were inconsistent with the totality of the medical evidence of record, as well as Plaintiff's own testimony and Plaintiff's mother's testimony regarding Plaintiff's improved condition.  (Tr. 29-30, 209).  As the ALJ pointed out in his decision, when Dr.

Boyer stated that Plaintiff was having one to two seizures per week, the record indicated no objective evidence of seizure activity. (Tr. 29, 160). Throughout the record Plaintiff states that she visits her mother every night, cleans two to three rooms per day, walks, does yard work, and can use public transportation. (Tr. 95-98, 208-09, 218). Further, Plaintiff indicated that she only has to take a 15 to 20 minute break from her activities when she feels a seizure coming on. (Tr. 100). Therefore, Plaintiff's own testimony is inconsistent with Dr. Boyer's assessment regarding Plaintiff's inability to work.

A review of Dr. Boyer's treatment notes indicates Plaintiff had reported various frequencies of her seizure activity; however, the treatment notes do not contain any detailed description of Plaintiff's seizure pattern typically. (Tr. 159-68, 190-95). Dr. Boyer's only functional limitation was reported on April 19, 2005, which stated Plaintiff is unable to operate a motor vehicle. (Tr. 193). The ALJ's residual functional capacity finding takes into consideration Dr. Boyer's assessment by placing restrictions of no driving and no exposure to hazardous machinery. (Tr. 28). In reviewing the medical records, the ALJ noted that Plaintiff required no more than regularly scheduled appointments with Dr. Boyer at four to six month intervals. (Tr. 159-68, 190-93). Also, Plaintiff testified she has not required emergency room treatment or blacked out due to her seizures since 1999 while under routine care. (Tr. 204). Thus, Dr. Boyer's conclusions were not deserving of controlling weight according to the Commissioner's regulations. 20 C.F.R. § 416.927(d)(2).

In determining whether an opinion is due controlling weight, the factors to be considered include length of treatment relationship, frequency of examination, nature and extent of treatment relationship, supportability of the opinion, consistency with the record, and specialization. *See* 20 C.F.R. § 416.927(d)(2)-(6). The opinion of a treating physician may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the

9

opinion is inconsistent with the record as a whole.  *See id.; Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

In this case, the ALJ found Dr. Boyer's conclusions are unsubstantiated by any specific clinical and objective evidence, or by any medical findings.  (Tr. 30).  Furthermore, there is nothing to suggest that Dr. Boyer's opinion was entitled to any weight because the number of seizures Plaintiff purportedly suffered is not supported by documentation.  (Tr. 29).  Therefore, the ALJ properly discounted Dr. Boyer's opinion due to its inconsistency with the totality of the medical evidence of record, the treatment Plaintiff received, the improvement in Plaintiff's condition with medication, and Plaintiff's own testimony.  (Tr. 29-30, 97-98, 100-101, 204).

## VII.    Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____12th_____ day of September, 2008.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

10